IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                            :
ROBERT P. GORDON            :       HON. JEROME B. SIMANDLE
                            :
          Petitioner,       :       Civil No. 10-5065 (JBS)
                            :       Criminal No. 05-698 (JBS)
     v.                     :
                            :
UNITED STATES OF AMERICA,   :          __OPINION__
                            :
          Respondent.       :
                            :
```

APPEARANCES:

William M. Norris, Esq.
8870 SW 62nd Terrace
Miami, FL 33173
     Counsel for Petitioner

Paul J. Fishman
United States Attorney
     By:  Diana V. Carrig
          Assistant United States Attorney
OFFICE OF THE U.S. ATTORNEY
401 Market Street, 4th Floor
Camden, NJ 08101
     Counsel for Respondent United States of America

**SIMANDLE**, District Judge:


I.    **INTRODUCTION**

     This matter is before the Court on the motion of the United

States of America [Docket Item 8] to dismiss Robert Gordon's

amended petition under 28 U.S.C. § 2255 to vacate, set aside, or

correct his sentence [Docket Item 3].  A federal jury found Mr.

Gordon guilty of one count of conspiracy to commit wire fraud and

securities fraud and one count of conspiracy to commit money

laundering; this Court sentenced him to 60 months imprisonment for the first count and 240 months imprisonment for the second count, to be served concurrently.  This matter also comes before the Court on the motion of Petitioner for an evidentiary hearing [Docket Item 15].

The principal issue raised by these motions is whether Petitioner's conviction was rendered invalid by the fact that the superseding indictment, proof at trial, and jury instructions did not explicitly define "proceeds" under the money laundering statute as "net profits," as the Supreme Court recently held was necessary in certain circumstances.  United States v. Santos, 553 U.S. 507 (2008).  The motions also require the Court to determine whether factual disputes raised by the parties related to Petitioner's ineffective assistance of counsel claims require an evidentiary hearing to resolve.  For the reasons that follow, the Court will grant in part and deny in part the Government's motion to dismiss the Amended Petition, and will grant Petitioner's motion for a hearing to resolve factual disputes related to Petitioner's ineffective assistance of counsel grounds as to trial counsel Frank Louderback, Esq., and appellate counsel Richard F. Klineburger, III, Esq.

## II.  BACKGROUND

On September 28, 2005, a federal grand jury returned a two-

count indictment, charging Petitioner Gordon and four co-defendants each with one count of conspiracy to commit securities and wire fraud in violation of 18 U.S.C. § 371 and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h).  [Cr. No. 05-698, Docket Item 1.]  A Superseding Indictment was subsequently filed on November 1, 2006.  [Cr. Docket Item 88.]

The Superseding Indictment alleged in Count I that, <u>inter alia</u>, the defendants conspired among themselves and with others to manipulate the share price and illegally convert restricted shares to free-trading shares of stock from the company TeleServices Internet Group, Inc. and its predecessors and related companies (primarily traded under the stock symbol TSIG). Superseding Indictment Count I ¶¶ 32-40.  In Count II, the Superseding Indictment alleged that, <u>inter alia</u>, the defendants conspired among themselves and with others to launder the money that such fraudulent stock transactions produced, in an effort to hide the fact that it had come from the underlying fraud.  The Government alleged that the defendants conspired to engage in financial transactions involving property that represented the "proceeds" of unlawful activity, with the intent to conceal and disguise the illegal nature or origin of those "proceeds." Superseding Indictment Count II ¶ 2.

Petitioner's jury trial on these charges began in this Court

on March 12, 2007; on April 4, 2007, Gordon filed a motion under
Fed. R. Crim. P. 29 for a judgment by acquittal, which the Court
denied.  [Cr. Docket Item 148.]  On April 9, 2007, the jury
returned a verdict of guilty on both Counts of the Superseding
Indictment.  [Cr. Docket Item 147.]  On September 25, 2007, the
Court sentenced Petitioner to a term of 60 months imprisonment on
Count I and a term of 240 months imprisonment on Count II, to be
served concurrently.  [Cr. Docket Item 154.]  Additionally, the
Court ordered that Petitioner pay restitution in the amount of
$11,620,179.90.  [Cr. Docket Item 162.]

     Petitioner timely appealed his conviction and sentence to
the Third Circuit on October 2, 2007.  Petitioner raised on
appeal two issues: (1) whether the Court's Order denying his
motion for acquittal at trial was wrongly decided, and (2) that
he was denied effective assistance of counsel at trial.  United
States v. Gordon, 335 F. App'x 236, 237 (3d Cir. 2011).  On July
1, 2009, the Third Circuit affirmed Gordon's conviction and
sentence, and declined to decide Petitioner's ineffective
assistance of counsel claim, preserving such claim for collateral
challenge under § 2255.  Id.  On July 27, 2009, the Third Circuit
denied Petitioner's motion for a rehearing en banc.  Gordon did
not file a petition for certiorari to the Supreme Court, so his
conviction became final on October 27, 2009.

     On October 1, 2010, the Court received Gordon's original

4

Petition to vacate his conviction under 28 U.S.C. § 2255. [Civ. Docket Item 1.] On October 6, 2010, in accordance with United States v. Miller, 197 F.3d 644, 652 (3d Cir. 1999), the Court notified Petitioner of the requirement that he must include all his claims for relief in his § 2255 motion, and gave him an opportunity to add new claims. [Civ Docket Item 2.] Petitioner thereafter filed an Amended Petition, which was received on December 20, 2010. [Civ. Docket Item 3.] On May 15, 2011, the United States filed its motion to dismiss the petition as a matter of law without an evidentiary hearing. [Civ. Docket Item 8.] Petitioner thereafter filed his opposition to the Government's motion [Civ. Docket Item 13], and subsequently filed his motion for a hearing on his ineffective assistance of counsel claims. [Civ. Docket Item 15.]

Gordon's original Petition and Amended Petition were drafted without the assistance of an attorney, though he has subsequently retained his current attorney, William Norris, Esq., who drafted and submitted Gordon's opposition to the Government's motion to dismiss and Gordon's motion for an evidentiary hearing. In his Amended Petition, Gordon raises five grounds for relief: (1) ineffective assistance of his trial counsel for failure to review discovery materials and to interview and subpoena defense witnesses; (2) actual innocence of the money laundering count under the precedent of United States v. Santos, 553 U.S. 507

(2008); (3) erroneous jury instructions on the money laundering
count pursuant to Santos; (4) ineffective assistance of his
appellate counsel for failing to raise the Santos issue on
appeal; and (5) ineffective assistance of his appellate counsel
for failing to notify him of the Third Circuit's affirmance of
his conviction, causing him to miss his deadline to move for
rehearing and petition for certiorari in the Supreme Court, for
which he seeks "reinstatement of his statutory right to petition
for rehearing and seek certiorari review in the Supreme Court."
Am. Pet'n at 30.


## III. DISCUSSION

### A.  Standard

28 U.S.C. § 2255(a) allows a prisoner held on a federal
sentence to apply to have the sentence vacated, set aside, or
corrected if, among other things, the sentence was imposed in
violation of the Constitution or is otherwise subject to
collateral attack, as in the case of an error of law that amounts
to a "fundamental defect which inherently results in a
miscarriage of justice." Brecht v. Abrahamson, 507 U.S. 619, 634
n.8 (1993) (quoting Hill v. United States, 368 U.S. 424, 428
(1962)).  Under § 2255(b), the Court can dispose of a claim for
collateral relief without a hearing when a petitioner's right to
the relief sought can be decided conclusively on the motion and

files and records of the case.  28 U.S.C. § 2255(b).  When factual disputes are raised that cannot be decided on the existing record, however, the Court must "grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  Id.

Generally, issues not raised on direct appeal may not be raised in collateral proceedings unless a petitioner can show cause for default that justifies why the issue was not raised and actual prejudice that resulted.  United States v. Findlay, 456 U.S. 152, 167 (1982).  One of the ways a convicted defendant can show justifying cause is by demonstrating ineffective assistance of counsel.  United States v. Mannino, 212 F.3d 835, 840 (3d Cir. 2000).  Alternatively, a procedurally defaulted claim may be raised on collateral review if the petitioner can claim that he is "actually innocent" of the crime.  Bousley v. United States, 523 U.S. 614, 623 (1998).

A pleading filed without a lawyer is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Such a petition must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney Gen., 872 F.2d 714, 721-22 (3d Cir. 1989).

**B.  Analysis**

The Court will first examine Petitioner's arguments with respect to the lawfulness of his conviction in light of the Supreme Court's Santos decision, and then whether his counsel was ineffective on any of the asserted theories.  As will be explained below, the Court finds that Petitioner is not entitled to the relief he seeks as a result of the Santos decision, but that factual disputes relating to two of his ineffective assistance claims require an evidentiary hearing to resolve.

### 1.  Actual Innocence Claim

Petitioner's first ground for relief derives from the 2008 Supreme Court case of United States v. Santos, which was decided after Petitioner's conviction in this Court but before his appeal was decided in the Third Circuit.  Petitioner claims that Santos requires the Court to vacate his money laundering conviction on collateral review.

In Santos, the Supreme Court confronted a collateral challenge to a money laundering conviction arising out of an illegal gambling operation.[1]  The issue in the case was whether a defendant could be convicted of money laundering for transactions

---

[1] "[Habeas Petitioner] Santos operated an illegal lottery for over two decades.  He used the gross receipts of the lottery to pay the winners and his employees (the runners and collectors who made the scheme possible). Based on these payments, Santos was convicted under a provision of the money-laundering statute that makes it unlawful to use criminal "proceeds" to promote illegal activity." United States v. Richardson, 658 F.3d 333, 338 (3d Cir. 2011) (internal citations omitted).

of "proceeds" promoting specified illegal activity when the only
transactions of "proceeds" involved "gross receipts" of the
underlying crimes, rather than "net profits."  <u>Santos</u>, 553 U.S.
at 510.  In a fractured decision, the Court affirmed the lower
court's vacating of the conviction, with four justices signing on
to a plurality opinion, Justice Stevens authoring an opinion
concurring in the result only, and four justices dissenting.

The plurality opinion held that because the use of the term
"proceeds" in the statute was ambiguous, under the rule of
lenity, "the tie must go to the defendant."  <u>Id.</u> at 514.
"Because the 'profits' definition of 'proceeds' is always more
defendant-friendly than the 'receipts' definition, the rule of
lenity dictates that it should be adopted."  <u>Id.</u>  Justice
Stevens' concurring opinion held that "proceeds" means "profits"
when, as in the particular case at issue in <u>Santos</u>, the
transaction charged as money laundering is merely "a normal part"
of the underlying specified criminal activity (the "merger
problem"), but it means "receipts" in other cases, such as the
sale of contraband and the operation of organized crime
syndicates, where legislative history clearly indicates an intent
for "proceeds" to mean "gross revenues."  <u>Id.</u> at 525-28 (Stevens,
J., concurring).

Petitioner argues that under the reasoning of the plurality
and concurring opinions in <u>Santos</u>, the United States was required

9

to prove that the "proceeds" he conspired to launder were, in fact, net profits of his underlying criminal activity rather than merely gross receipts.  Claiming that the assets transferred and secreted between the co-conspirators in his securities and wire fraud conspiracy involved at most only gross receipts, Petitioner argues his conviction on the money laundering count must be vacated as he is actually innocent of the charge.

The Government argues that the Court should dismiss this claim for several reasons.  The Government argues (1) that the Santos decision is not applicable in this case because, as it was decided by a fragmented Court with no majority opinion, it should be limited to its facts; (2) Santos applies only to "promotion" money laundering charges under 18 U.S.C. § 1956(a)(1)(A)(i), while Petitioner's money laundering conspiracy was a "concealment" case under 18 U.S.C. § 1956(a)(1)(B)(i); (3) the Santos decision should not be given retroactive application; and (4) even if the Santos plurality opinion were to be applied in this case, Petitioner cannot be found actually innocent of his conviction because the "proceeds" proven at trial were, in fact, "net profits" as defined by the Santos plurality.

The Third Circuit has decided two precedential opinions discussing Santos.  The first decision, United States v. Yusuf, 536 F.3d 178 (3d Cir. 2008), assumed that the Santos plurality opinion applied in a case of tax and mail fraud, and that

10

"proceeds" meant "profits" under the money laundering statute, but concluded that "unpaid taxes, which are unlawfully disguised and retained . . . constitute 'proceeds' of mail fraud for purposes of supporting a charge of federal money laundering." Id. at 189.

The most recent precedential opinion by the Third Circuit discussing Santos, United States v. Richardson, 658 F.3d 333 (3d Cir. 2011), concluded that the Santos plurality decision did not apply in a case of alleged money laundering assets derived from drug sales.  "We believe that 'proceeds' means gross receipts in the circumstances of this case."  Id. 340.  The Circuit, applying Justice Stevens' concurring opinion, concluded that 'gross receipts' was the proper definition because the "merger problem" was not present when the transaction charged as money laundering (purchasing a house) was not "integral to nor an expense [normally] associated with" the underlying crime (drug trafficking).  Id.

As stated above, the parties dispute whether the Santos plurality opinion should apply in this case for several reasons. The Government argues that, as a plurality opinion, Santos must be limited to its narrowest grounds, Marks v. United States, 430 U.S. 188, 193 (1977), which held only that "proceeds" means "profits" when the predicate offense is an illegal gambling operation.  Petitioner argues, by contrast, that under the

11

reasoning of the concurring opinion, the Court should conclude that "proceeds" must mean "profits" here because applying the "gross receipts" definition would lead to the merger problem and perverse result of convicting Petitioner for a second crime (resulting in a substantially higher sentence than the underlying crime) when the transactions in question are a normal and expected result of the underlying crime.

The Court assumes without deciding that "proceeds" means "profits" in this case, but finds that even so, Petitioner has failed to meet his burden of demonstrating his "actual innocence" because the proceeds that were alleged in the Superseding Indictment and proven at trial were, in fact, profits rather than merely gross receipts.

In Yusuf, the Third Circuit confronted a different procedural posture than the instant case; there, the Court of Appeals vacated the District Court's order dismissing money laundering counts from an indictment for failure to state an offense.  The District Court reasoned that the "proceeds" alleged in the indictment were merely gross receipts of the alleged underlying criminal conduct of tax fraud and mail fraud and therefore could not state an offense under the statute.  Yusuf, 536 F.3d at 180.  The Circuit vacated the order because, even when applying the Santos plurality rule that "proceeds" means "profits," the indictment stated an offense under the money

laundering statute because the "proceeds" that were laundered in that case, unpaid taxes that were unlawfully disguised and retained by means of filing of false tax returns, were, in fact, "profits" and therefore punishable under the money laundering statute, 18 U.S.C. § 1956(a).  Id. at 189.

> By intentionally misrepresenting the total amount of Plaza Extra Supermarkets' gross receipts through the mailing of fraudulent tax returns, the defendants were able to secretly "pocket" the 4% gross receipts taxes on the unreported amounts which were the property of the Virgin Islands government. . . . Other than some small expenses incurred in perpetuating the mail fraud – i.e., the postage stamp affixed to their monthly tax return or any other preparation fees relating to the return – the unpaid taxes retained by the defendants amounted to profits.  Once these profits were included in the lump sums sent abroad by defendants, the offense of international money laundering was complete.

Id. at 190.

     The Court also finds persuasive the District of New Jersey case of Abuhouran v. Grondolsky, 643 F. Supp. 2d 654 (D.N.J. 2009), in which the court denied a petition for habeas relief on an "actual innocence" claim after concluding that the "proceeds" proven at the defendants' bank fraud and money laundering trial were, in fact, "profits."  Abuhouran v. Grondolsky, 643 F. Supp. 2d at 655, aff'd 392 F. App'x 78 (3d Cir. 2010).  The defendants in Abuhouran were convicted of multiple overlapping counts of bank fraud and various other financial frauds, as well as several counts money laundering offenses.  Id. at 655-59.  On collateral

review, the petitioners claimed that the "proceeds" of these
frauds could not be characterized as "profits" under Santos
because the petitioners took the proceeds of the individual acts
of bank fraud, and reinvested them "in pursuit of [their
construction] business, and that because the construction
business lost money, there were no profits to support money
laundering charges."  Id. at 664.

     The district court rejected this argument in a lengthy and
well-reasoned opinion, concluding that the government need only
prove one completed and distinct, specified criminal act, which
produced some net profit, the assets of which were then
transacted in a manner otherwise unlawful as money laundering.
Id. at 673.  The court pointed to language from the plurality
opinion in Santos to support its conclusion.

> The "proceeds of specified unlawful activity"
> are the proceeds from the conduct sufficient
> to prove one predicate offense.  Thus, to
> establish the proceeds element under the
> "profits" interpretation, the prosecution
> needs to show only that a single instance of
> specified unlawful activity was profitable and
> gave rise to the money involved in a charged
> transaction. . . . the factfinder will not
> need to consider gains, expenses, and losses
> attributable to other instances of specified
> unlawful activity, which goes to the
> profitability of some entire criminal
> enterprise. What counts is whether the
> receipts from the charged unlawful act exceed
> the costs fairly attributable to it.

Santos at 520 (emphasis original) (quoted in Abuhouran at 673).

     Petitioner, similar to the petitioners in Abuhouran, argues

14

in the instant action that he was not actually convicted of conspiracy to commit money laundering at trial because he was only convicted of transacting proceeds that were gross receipts of his failing business.  Thus, petitioner argues, because he reinvested any assets he acquired from the illegal sale of his restricted stock, and from the inflated price of his stock caused by the actions of his co-conspirators, and because ultimately TeleServices Internet Group went out of business and Petitioner lost money in the long run, the Government never proved that he "profited" from his securities and wire fraud acts, so he could not have committed money laundering.

The Court finds this argument unpersuasive.  According to the plurality opinion in <u>Santos</u>, to convict Petitioner of a money laundering offense, the Government needed only to prove "that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction." <u>Santos</u> at 520.

As the Government demonstrates at great length, several instances of securities fraud were profitable and gave rise to the money involved in a subsequent transaction conducted by one of Petitioner's co-conspirators.  A completed act of securities fraud has occurred under 15 U.S.C. § 77q(a) when

> (1) the defendant made a representation, or an omission where there was a duty to speak, or used a fraudulent device; (2) that misrepresentation or omission was material;

15

> (3) the defendant made the misrepresentation
> or omission with scienter; (4) the defendant
> made the misrepresentation or omission in
> connection with the sale of a security; and
> (5) the defendant made the misrepresentation
> or omission in connection with interstate
> commerce or the mails.

S.E.C. v. Pasternak, 561 F. Supp. 2d 459, 498 (D.N.J. 2008).

At trial, the Government offered proof that Petitioner and his co-conspirators fraudulently transferred the ownership of restricted shares of TSIG from Petitioner to shell companies which Petitioner and his co-conspirators actually controlled, which were located in the Cayman Islands, in an effort to strip the restrictions from the shares so they could be sold on the open market.  See Government's Supplemental Appendix, 423:24 - 426:2 (testimony of Peter Futro).  These shares were then knowingly misrepresented as freely trading stock and sold on the open market to unsuspecting purchasers from a Canadian brokerage. Supplemental Appendix, 410:22 - 411:5.  These acts were completed instances of securities fraud.  15 U.S.C. § 77q(a).

Additionally, the Government proved that Petitioner and his co-conspirators then transferred the "proceeds" of these sales to an account in Denver under the control of co-conspirator attorney Peter Futro, and then (after subtracting the co-conspirators' "cut" from the proceeds) transferred the "proceeds" of these acts of securities fraud to Petitioner's bank account in Florida. Supplemental Appendix, 462:18 - 464:18.  The Court concludes that

16

these "proceeds" can only be characterized as the "profits" of the securities fraud, as they were the net gains from a completed criminal act.  Santos at 520.  That Gordon claims that he then loaned these assets back to the company is irrelevant to the necessary proof of money laundering according to the Santos plurality.

> The factfinder will not need to consider gains, expenses, and losses attributable to other instances of specified unlawful activity, which goes to the profitability of some entire criminal enterprise. What counts is whether the receipts from the charged unlawful act exceed the costs fairly attributable to it.

Id.

Petitioner's actual innocence claim fails, as a result, because he has not established (and cannot establish) that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623 (1998).  As a result, the Court will grant the Government's motion to dismiss Petitioner's actual innocence claim.

### 2.  Erroneous Jury Instructions

Petitioner additionally argues that his conviction should be vacated because the jury instructions failed to require the jury to explicitly find that the proceeds he transacted were "profits" of the underlying criminal activity.  Petitioner specifically points to Instruction No. 51, which stated that "The term

'proceeds' means any property, or any interest in property, that someone acquires or retains as a result of the commission of the specified unlawful activity.  Proceeds can be any kind of property, not just money."  Jury Instructions at 73 [Cr. Docket Item 143].  Thus, the jury instructions were silent on the question of whether the jury needed to find proceeds as profits or merely gross receipts.

The Court will dismiss this claim for the same reasons discussed above in the actual innocence claim.  Under the reasoning of the Santos plurality, Yusuf, and Abuhouran, the proceeds that Petitioner and his co-conspirators transacted in an effort to conceal their origin or nature were, in fact, profits of the securities fraud.  In these circumstances, "proceeds" and "profits" were synonymous.  Thus, Petitioner suffered no prejudice from any jury instruction.

As explained above, because Petitioner did not object to the instruction at trial, nor raise this argument on direct appeal, to obtain relief on collateral review, Petitioner must prove cause and actual prejudice for his failure to raise the argument earlier.  The Court concludes that Petitioner fails to demonstrate "actual prejudice" under the standard described in United States v. Frady, 456 U.S. 152, 169 (1982).  To show actual prejudice, Petitioner has the "burden of showing, not merely that the errors at his trial created a possibility of prejudice, but

18

that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 170.

Petitioner offers no proof of such actual prejudice in this matter, as he did not, for example, offer any proof at trial that the "proceeds" at issue were only "gross receipts," which argument might have been prejudiced by the unspecific jury instruction. Thus, the Court will dismiss Petitioner's jury instruction claim.[2]

### 3. Ineffective Assistance of Appellate Counsel

Petitioner argues that his appellate counsel was constitutionally ineffective for two reasons: 1) for his failure to raise the Santos argument on appeal, and 2) for his alleged failure to notify Petitioner of the Circuit Court's denial of his appeal. The Court will first address the Santos claim and then turn to the "failure to notify" claim.

---

[2] The Court finds, additionally, that even under the "plain error" standard argued by Petitioner, the Court would not find that the challenged jury instruction warrants that his conviction be vacated. The Third Circuit has held that a challenged instruction must first be demonstrated to be an error, second that the error was prejudicial to substantial rights and finally, the error must "seriously affect the fairness, integrity or public reputation of judicial proceedings." United States v. Antico, 275 F.3d 245, 265 (3d Cir. 2001) (abrogated on other grounds by United States v. Riley, 621 F.3d 312 (3d Cir. 2010)). The Court concludes that there was no prejudice to Petitioner's substantial rights because, as articulated above, the "proceeds" Petitioner laundered were "profits". Thus, even if the challenged instruction had defined the term "proceeds" as being "profits" the result would have been the same.

Petitioner claims that his appellate counsel was constitutionally ineffective because he did not raise on direct appeal the Santos issue discussed above.  In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for analyzing claims of ineffective assistance of counsel.  First, a petitioner must show that counsel's performance "fell below an objective standard of reasonableness," and, second, that counsel's ineffectiveness was prejudicial.  Id. at 688, 692.  In order to satisfy the "prejudice" component of the Strickland test, a petitioner must show that a reasonable probability exists that "but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 669.  When applying this test the Supreme Court noted that either the performance or the prejudice prongs of Strickland may be addressed first.  In fact, the Supreme Court recommends beginning the analysis with whichever prong is easiest to satisfy or dispose of.  Id. at 697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Id.

The Court concludes that Petitioner's claim of ineffective assistance of counsel on the Santos ground fails because he is unable to establish prejudice from the failure to raise the argument on appeal.  Because the assets proven at trial in Petitioner's money laundering charge were, in fact, profits, the

20

Court concludes that had Petitioner's appellate counsel raised
the issue on appeal, no different outcome would have resulted.
Indeed, this Court's analysis of the <u>Santos</u> issue raised by
Petitioner here is largely modeled on the Third Circuit's
analysis of similar claims, as seen in <u>Yusuf</u>, <u>Richardson</u>, and
<u>Abuhouran v. Grondolsky</u>, 392 F. App'x 78 (3d Cir. 2010).
Petitioner has offered no persuasive argument to suggest that the
Third Circuit would have been likely to rule differently in his
case.  Consequently, Petitioner has not established prejudice
sufficient to prove his Sixth Amendment right to effective
counsel was violated in this claim.

      4.  <u>Ineffective Assistance of Counsel Failure to Notify</u>

      Petitioner additionally argues that his appellate counsel's
alleged failure to notify him of the Third Circuit's decision in
his direct appeal warrants the reinstatement of his right to seek
further review of his direct appeal in the Third Circuit and in
the Supreme Court.  Petitioner alleges that he did not hear of
the Third Circuit's affirmance of his conviction directly from
his appellate counsel, but rather learned of it indirectly from
another inmate.  Consequently, he alleges that because he did not
hear of the decision until after the deadline for filing for
rehearing <u>en banc</u> or for certiorari with the Supreme Court, his
counsel's failure to timely notify him has prejudiced his rights
under the Sixth Amendment and his statutory right to effective

21

assistance of counsel under Fed. R. Crim. P. 44(a) and the Criminal Justice Act of 1964.  Wilson v. United States, 554 F.2d 893, 894 (8th Cir. 1977) ("Failure to advise a defendant of his right to petition for certiorari in the Supreme Court violates his right to effective assistance of counsel as guaranteed by Fed. R. Crim. P. 44(a) and the Criminal Justice Act of 1964, 18 U.S.C. § 3006A.").

The Government responds that Petitioner's appellate counsel was not deficient because counsel did, in fact, notify Petitioner, through his family, of the Third Circuit's decision, and attaches an affidavit of Petitioner's appellate counsel, Richard F. Klineburger, III, Esq., attesting to this fact. Assuming that the failure to notify a convicted prisoner of the Third Circuit's decision would constitute ineffective assistance of counsel sufficient to warrant the relief Petitioner seeks, under the reasoning of the Eighth Circuit case of Wilson v. United States (which the Government does not address), the primary dispute between the parties on this point is a factual dispute: whether or not Petitioner's appellate counsel adequately notified Petitioner of the Court's decision.

This factual dispute requires that the Court conduct an evidentiary hearing.  Under § 2255(b), when a petitioner's right to the relief sought cannot be decided conclusively on the motion and files and records of the case, the Court must "grant a prompt

hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  To determine whether or not Mr. Klineburger adequately notified Petitioner of the outcome of his direct appeal, the Court will require the testimony of Mr. Klineburger and Mr. Gordon, so that it can make findings of fact that will determine the issue.  Thus, the Court will deny the Government's motion to dismiss without prejudice at this time pending the parties' testimony, and will grant Petitioner's motion for a hearing on this issue.

5.  <u>Ineffective Assistance of Trial Counsel</u>

Finally, Petitioner also moves to vacate his conviction on the ground that his trial counsel, Frank Louderback, Esq., was constitutionally ineffective for his failure to conduct an investigation into Petitioner's defense.  Petitioner points to two alleged failures of his trial counsel that, he contends, rendered his performance deficient in a manner that was prejudicial to the outcome of the jury trial.  First, Petitioner argues that Mr. Louderback failed to sift through some 150 boxes of documents, which were made available to him by the Government prior to the start of trial, and were being stored in the FBI office in Atlantic City, New Jersey.  Petitioner argues this purported failure to read through these boxes of records constituted constitutionally ineffective assistance.

23

The Court finds that Petitioner has not met his burden under Strickland on this point, as Petitioner has not pointed to any prejudice that resulted from the alleged failure to wade through these boxes.  For example, he has identified no potentially exonerating evidence that was available in these boxes that was, because of Mr. Louderback's failure to investigate, not presented to the jury at trial.  Thus, the Court finds that Mr. Louderback's decision not to read through the records in the FBI office in Atlantic City prior to trial did not constitute constitutionally ineffective assistance of counsel.

Secondly, Petitioner claims that, prior to trial, he presented Mr. Louderback with a list of some 44 witnesses and instructed Mr. Louderback to contact them, interview them and, if necessary, subpoena them to testify at trial.  He further claims that some 27 of these identified witnesses (and an additional seven witnesses apparently not initially presented to Mr. Louderback) were available and willing to testify on Gordon's behalf at trial.  Petitioner describes in brief form the testimony that these 27 witnesses would have provided at trial, and includes affidavits and declarations from several of them. Petitioner argues that Mr. Louderback's failure to interview and elicit their testimony at trial constituted ineffective assistance of counsel that resulted in prejudice to him because, had they been called to testify at trial, the result of the trial

24

would have been different.

The Government responds by attaching an affidavit of Mr.
Louderback which disputes the factual representations of
Petitioner as to the agreed-upon strategy of defense, the efforts
he undertook to investigate Petitioner's defense, and whether
Petitioner ever, in fact, requested the testimony of several of
the identified witnesses or any expert testimony.  Louderback
Aff.  Additionally, the Government argues in its motion to
dismiss that Petitioner fails to demonstrate prejudice because
some of the witnesses would not have testified to any issue
relevant to his conviction.

The Court concludes that, as with the alleged failure to
notify claim, Petitioner's ineffective assistance of trial
counsel claim requires an evidentiary hearing to resolve the
factual disputes between Petitioner's account of his interactions
with Mr. Louderback, and Mr. Louderback's account of those
interactions, with respect to pursuing testimony on Petitioner's
behalf from the alleged witnesses.  Accordingly, the Court will
deny the Government's motion to dismiss without prejudice pending
the evidentiary hearing at which the Court will take testimony of
Petitioner and Mr. Louderback.

**IV.  CONCLUSION**

As explained above, the Court has concluded that the motion

and files and records of this case conclusively show that, as a matter of law, Petitioner is not entitled to relief under 28 U.S.C. § 2255 for three of his asserted grounds: his claim of actual innocence under United States v. Santos, 553 U.S. 507 (2008); his claim of erroneous jury instructions under Santos, and his claim of ineffective assistance of trial counsel for failing to raise the Santos issue on appeal.  However, the Court has concluded that factual disputes prevent the resolution of Petitioner's remaining two claims for relief regarding constitutional adequacy of trial counsel (concerning witness interviews) and appellate counsel (concerning notification of Petitioner about Third Circuit affirmance), and will consequently convene an evidentiary hearing on these two claims.  The accompanying Order will be entered.


**December 19, 2011**                         **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              United States District Judge

26